## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **BRYAN DAVID THOMPSON,** | ) | **CHAPTER 13** |
| **SHANNON LEE THOMPSON,** | ) | |
| | ) | **CASE NO. 16-41808-EJC** |
| DEBTORS. | ) | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - | ) | **JUDGE: EDWARD J. COLEMAN, III** |
| | ) | |
| **FLAGSTAR BANK, FSB,** | ) | |
| | ) | |
| MOVANT. | ) | - - - - - - - - - - - - - - - - - - - - - - - - - - - |
| V. | ) | **CONTESTED MATTER** |
| | ) | |
| **BRYAN DAVID THOMPSON,** | ) | |
| **SHANNON LEE THOMPSON,** | ) | |
| **O. BYRON MEREDITH, III, TRUSTEE,** | ) | |
| | ) | |
| RESPONDENTS. | ) | |

### MOTION FOR RELIEF FROM AUTOMATIC STAY AND
### WAIVER OF 30-DAY REQUIREMENT UNDER § 362(E)

FLAGSTAR BANK, FSB ("Movant"), by and through its undersigned counsel, and pursuant to Rules 4001 and 9014 of the Bankruptcy Rules and § 362(d) of the Bankruptcy Code, requests relief from the automatic stay provided by § 362(a) of the Bankruptcy Code and waiver of the 30-day requirement under § 362(e). In support thereof, Movant alleges as follows:

1.

On or about April 20, 2015, Mortgage Electronic Registration Systems Inc., as nominee for Soderlind Inc., ("Original Lender") made a secured loan to Debtor, BRYAN THOMPSON, in the principal amount of $115,429.00 ("Loan"). The Loan is evidenced and secured by a promissory note ("Note") and a security deed ("Security Deed") encumbering that certain real property known as 2628 GA HIGHWAY 119 S, GUYTON, GA 31312 ("Property"), said

1

Security Deed being recorded on April 27, 2015 at Deed Book 2288 / Page 388-401, of the Effingham County, Georgia land records, all of which Debtor executed in favor of the Original Lender on April 20, 2015. True and correct copies of the Security Deed and Note are attached hereto as Exhibits "A" and "B," respectively.

2.

Through the Security Deed, the Original Lender acquired a secured interest in the Property, together with all improvements, easements, rights, appurtenances and fixtures on the Property.

3.

On or about August 22, 2016, Original Lender assigned all of its right, title, and interest in the Security Deed to Movant. A true and accurate copy of the Assignment is attached hereto as Exhibit "C".

4.

The Noteholder has the right to foreclose because Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent has possession of the promissory note and the promissory note is either made payable to Noteholder or has been duly endorsed.

5.

Movant's secured interest in the Property is perfected and continuing.

6.

Debtor filed a voluntary Chapter 13 bankruptcy petition in this Court on November 29, 2016.

7.

Trustee is named as a respondent solely in his official capacity.

8.

Debtor was, at the time of said Chapter 13 petition, and is now the owner of the Property.

9.

Pursuant to the terms of the Loan documents and the Note and Security Deed, the Debtor has been required to make direct payments to Movant at the standard post-petition rate of $791.15 each month.

10.

Debtor has defaulted in making payments which have come due since this case was filed. As of February 7, 2017, Debtor has a post-petition deficiency of $3,404.45. This figure is comprised of Three (3) post-petition mortgage payments in the amount of $791.15 each; less a suspense balance of $0.00; plus attorney's fees and costs in the amount of $1,031.00.

11.

As of February 7, 2017, the principal amount due Movant under the Loan documents and the Note and Security Deed is $113,799.53, plus interest, late charges, attorney's fees and costs.

12.

The automatic stay provided by Section 362(a) of the Bankruptcy Code prevents Movant from enforcing its lawful foreclosure rights against the Property pursuant to its Security Deed.

13.

Section 362(d) of the Bankruptcy Code requires a Court to grant relief from the automatic stay by terminating, modifying or annulling the stay, for cause, including the lack of adequate

protection of a lien holder's interest in its collateral.

14.

Movant does not have adequate protection of its interest in the Property because the Debtor has failed to comply with the terms of the Loan documents and the Note and Security Deed.  Consequently, cause exists to grant Movant relief from the automatic stay so that Movant may exercise its remedies under the Security Deed and applicable state law with regard to the enforcement of its debt against the Property.

15.

Debtor also has no equity in the Property and has asserted no equity in the Property, so that Movant does not have, and cannot be given, adequate protection of its interest in the Property.

16.

If Movant is not permitted to exercise it legal rights against the Property pursuant to its Security Deed, Movant will suffer irreparable injury, loss and damage.

17.

Movant requests a waiver of the 30-day requirement under § 362(e).

WHEREFORE, Movant respectfully prays and requests of this Court as follows:

(a)    that the Automatic Stay pursuant to 11 U.S.C. § 362 be modified so as to permit the Movant to exercise its right to foreclose its secured property under the terms of the Note and Security Deed and to send notices as required by state law; or, in the alternative, Movant at its option be permitted to contact the Debtor via telephone or written correspondence to offer, provide or enter into any potential forbearance agreement, loan modification, refinance

agreement or other loan workout or loss mitigation agreement including a deed in lieu of foreclosure as allowed by state law; and

(b)    that the terms of Bankruptcy Rule 4001(a)(3) be waived so that Movant may immediately enforce and implement the Order granting relief from the Automatic Stay; and

(c)    that the costs and fees associated with filing and prosecution of this Motion by Movant, including, but not limited to Movant's attorney fees and the associated filing fee, be borne by Debtor; and

(d)    that Movant, through its agents, servicers and representatives is/are permitted to contact Debtor and/or Debtor's counsel for the purpose of engaging in discussions and consideration for possible loss mitigation options, solutions and/or resolutions with regard to the underlying mortgage and note, including, but not limited to loan modification or other loss mitigation alternatives; and

(e)    that Movant be granted any such other and further relief as this Court may deem just and proper.

Dated: March 13, 2017

Respectfully submitted

*/S/ C. Brent Wardrop*
C. Brent Wardrop
Georgia Bar No. 553733
Weissman PC
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, Georgia 30326
Tel.: 404-926-4500 / Fax: 404-926-4600
brentw@weissman.law
ATTORNEYS FOR MOVANT

5

## **CERTIFICATE OF SERVICE**

I, C. Brent Wardrop, certify that I am over the age of 18 and that on this date, I served a copy of the foregoing **Motion for Relief from Automatic Stay** by First Class United Stated Mail, with adequate postage prepaid, on the following persons or entities at the addresses stated:

SHANNON LEE THOMPSON
2628 GA HIGHWAY 119 S
GUYTON, GA 31312

BRYAN DAVID THOMPSON
2628 GA HIGHWAY 119 S
GUYTON, GA 31312

DENNIS G. DOZIER, SR., Esq.
DOZIER LAW, P.C.
430 SILVERWOOD CENTRE DR.
P.O. BOX 410
RINCON, GA 31326

O. BYRON MEREDITH, III

P O BOX 10556
SAVANNAH, GA 31412

Dated: March 13, 2017

*/S/ C. Brent Wardrop*_____
C. Brent Wardrop
Georgia Bar No. 553733
Weissman PC
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, Georgia 30326
Tel.: 404-926-4500 / Fax: 404-926-4600
brentw@weissman.law
ATTORNEYS FOR MOVANT

6

# Exhibit A

DOC# 003007
FILED IN OFFICE
03/27/2015  02:20 PM
BK:2288  PG:388-401
ELIZABETH Z. HURSEY
CLERK OF SUPERIOR
COURT
EFFINGHAM COUNTY

*Elizabeth Z. Hursey*

GEORGIA INTANGIBLE
TAX PAID
$346.50

**After Recording Return To:**

RETURN TO:
BECKMANN & LEWIS, LLP
317 TATTNALL STREET            ;35-1
SAVANNAH, GEORGIA 31401

---

V1 WBCD LOAN #▓▓▓▓▓▓

[Space Above This Line For Recording Data]

---

## SECURITY DEED

| CASE #: ▓▓▓▓▓▓▓▓ |
| MIN ▓▓▓▓▓▓▓▓▓▓▓▓▓ |
| MERS PHONE #: ▓▓▓▓▓▓▓ |

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **APRIL 20, 2015,**            together with all Riders to this document.

**(B) "Borrower"** is   **Bryan Thompson.**

Borrower is the grantor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is   **SODERLIND INC.**

Lender is a **CORPORATION**                              organized and existing under the laws of **GEORGIA.**                                    Lender's address is **785 KING GEORGE BLVD, 201, SAVANNAH, GA  31419.**

**(E) "Note"** means the promissory note signed by Borrower and dated **APRIL 20, 2015.**            The Note states that Borrower owes Lender  **\*\*\*ONE HUNDRED FIFTEEN THOUSAND FOUR HUNDRED TWENTY NINE AND NO/100\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** Dollars (U.S.   **$115,429.00    )** plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **MAY 1, 2045.**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

Initials: ▓▓▓▓

---

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01**
Online Documents, Inc.            **Page  1  of  9**

GAEDEED 1212
**04-17-2015 15:33**

14

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Condominium Rider
- [ ] Second Home Rider
- [ ] Balloon Rider
- [ ] Planned Unit Development Rider
- [x] Other(s) [specify] **WAIVER OF BORROWER'S RIGHTS RIDER**
- [ ] 1-4 Family Rider
- [ ] Biweekly Payment Rider
- [x] V.A. Rider

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the **COUNTY**                     [Type of Recording Jurisdiction] of **EFFINGHAM**
[Name of Recording Jurisdiction]:
**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**
**APN #: 0320-021**

which currently has the address of  **2628 GA HIGHWAY 119 S, GUYTON**

[Street] [City]

**Georgia    31312-4707**     ("Property Address"):
[Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials:

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01**
Online Documents, Inc.                     **Page  2  of  9**                     GAEDEED 1212
**04-17-2015 15:33**

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items,

Initials: _____

unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to

Initials: _____

settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.   Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7.   Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.   Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.   Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Initials: [handwritten]

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3011 1/01
Online Documents, Inc.                      Page   5   of 9

GAEDEED 1212
04-17-2015  15:33

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

Initials: _____

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3011 1/01
Online Documents, Inc.                    **Page   6   of   9**

GAEDEED 1212
04-17-2015 15:33

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the

Initials: ___

Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the

Initials: _____

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3011 1/01
Online Documents, Inc.                    Page    8    of   9

GAEDEED 1212
04-17-2015 15:33

# Exhibit A

proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

   **If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.**

   **23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

   **24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

   **25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

   **26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

   BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

   IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____ (Seal)
BRYAN D. THOMPSON


_____
Unofficial Witness


_____
Notary Public,
CHATHAM County

[Notary Seal: MEAGAN M. BRAGG / NOTARY PUBLIC / EFFINGHAM COUNTY, GA / My Comm. Exp. 4-2-17]


Loan Originator Organization: SODERLIND INC
NMLS ID: ▮▮▮▮▮▮
Loan Originator: David Soderlind
NMLS ID: ▮▮▮▮▮▮

GEORGIA -

Grantor: **BRYAN D. THOMPSON**                    Date: **APRIL 20, 2015**

Loan Number: ███████

Property Address: **2628 GA HIGHWAY 119 S**
**GUYTON, GA 31312-4707**

Lender: **SODERLIND INC**

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

**BRYAN D. THOMPSON**                    SEAL

Signed, Sealed and delivered in the presence of:

_____

_____
Notary Public

© 1997-2009 Online Documents, Inc          Page 1 of 2                    GABORWAV  0906
04-17-2015 15:33



V1  WBCD LOAN # ████████

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me _____ on the date set forth above.

_____
Notary Public

_____
Closing Attorney




```
V1 WBCD LOAN #
CASE #:
MIN:
```

### VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this **20TH** day of **APRIL, 2015,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to **SODERLIND INC, A GEORGIA CORPORATION**

(herein "Lender")
and covering the Property described in the Security Instrument and located at
**2628 GA HIGHWAY 119 S**
**GUYTON, GA 31312-4707**

VA GUARANTEED LOAN COVENANT: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

LATE CHARGE: At Lender's option, and as allowed by applicable state law, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY: This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

    (a) ASSUMPTION FUNDING FEE: A fee equal to one-half of 1 percent (.50%) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an

**V1 WBCD LOAN #** ███████

additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

IN WITNESS WHEREOF, Borrower(s) has executed this VA Guaranteed Loan and Assumption Policy Rider.

_____(Seal)
BRYAN D. THOMPSON

**VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER**
Online Documents, Inc.                     **Page  2  of  2**                     P8751ASR  1103
                                                                                                04-17-2015 15:33

EXHIBIT A

That certain tract or parcel of land situate, lying and being in the City of Guyton, 10th G.M. District of Effingham County, Georgia, containing one and twenty-three/hundredths (1.23) acres, more or less, bounded on the northeast by lands now or formerly of W.F. Griner; on the southeast by State of Georgia Highway #119; on the southwest and northwest by lands now or formerly of W. F. Griner, according to a map or plat made by Charles F. Truett, Jr., October 16, 1980, recorded in Plat Record 14, page 168, Office of the Clerk of the Superior Court, Effingham County, Georgia.

Subject, however to all (if any) restrictions, covenants, easements and indebtedness of record or evidenced by use.

Also, All that certain tract or parcel of land situate, lying and being in th City of Guyton, 10th G.M District of Effingham County , Georgia, containing Three Tenths (.3) of an acre, more or less, and being known and designated as Parcel "B" as shown on the plat cabinet C-31-D as recorded in the Office of the Clerk of the Superior Court of Effingham County, Georgia, Guyton 10th G.M. District. Said parcel of land bounded on the northeast by parcel "C" as shown on said plat; on the southeast by Georgia State Highway119; and on the south west by lands now or formerly of Mary Grace Fisher.  The subject property is commonly referred to as 2628 Hwy 119 South, Guyton, Effingham County, Georgia PIN # 0320-021.

**NOTE**

CASE #:
MIN:

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

| APRIL 20, 2015 | Savannah, | GEORGIA |
|---|---|---|
| [Date] | [City] | [State] |

2628 GA HIGHWAY 119 S, GUYTON, GA 31312-4707
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.     **$115,429.00**     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **SODERLIND INC, A GEORGIA CORPORATION.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     **4.750%.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    **1ST**    day of each month beginning on **JUNE 1, 2015.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    **MAY 1, 2045,**    I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
**785 KING GEORGE BLVD
201
SAVANNAH, GA 31419**
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S.     **$602.13.**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200 1/01 MODIFIED
© 1999-2008 Online Documents, Inc.      **Page 1 of 3**

Initials: 

V3200NOT 0805
**04-17-2015 15:33**

ORIGINAL NOTE-1

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    **4.000%** of my overdue payment. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent,

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200 1/01 MODIFIED
© 1999-2008 Online Documents, Inc.                      Page 2 of 3

Initials:
V3200NOT  0805
04-17-2015 15:33



ORIGINAL NOTE-1

Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. ALLONGE TO THIS NOTE

If an allonge providing for payment adjustments or for any other supplemental information is executed by me together with this Note, the covenants of the allonge are incorporated into and amends and supplements the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge     ☐ Other [Specify]

## 12. V.A. REGULATIONS

Regulations (38 C.F.R. Part 36) issued under the Department of Veterans Affairs ("VA") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
BRYAN D. THOMPSON

```
Loan Originator Organization: SODERLIND INC
NMLS ID: ████
Loan Originator: David Soderlind
NMLS ID: ████
```

PAY TO THE ORDER OF

WITHOUT RECOURSE
FLAGSTAR BANK, FSB

BY: _Melinda McNeal_
MELINDA MCNEAL
VICE PRESIDENT

PAY TO THE ORDER OF
FLAGSTAR BANK, FSB
WITHOUT RECOURSE

SODERLIND INC

BY: _____

PRINTED NAME: _____

ITS: _____

PAY TO THE ORDER OF
Flagstar Bank, FSB
WITHOUT RECOURSE

_Soderling Inc_
BY: FLAGSTAR BANK, FSB, AS AUTHORIZED SIGNATORY

_Mee Lor_

Mee Lor
Review Rep/Post Closing Receiving Department
Attorney In Fact under Special Limited Irrevocable Power of Attorney

**[Sign Original Only]**

**MULTISTATE FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3200 1/01 MODIFIED
© 1999-2008 Online Documents, Inc.        Page   3   of 3          V3200NOT  0805
04-17-2015 15:33



ORIGINAL NOTE-1





ORIGINAL NOTE-1

**Exhibit C**



*First American Title Company*

# Electronically Recorded Document

## Ref 1

The attached document was recorded on your behalf by First American Title Company via our electronic recording process.

We are returning your original document along with this cover page that includes the post-recording information at the bottom. To view a full image of the post-recorded document, please visit our website at www.lendersadvantage.com.

Thank you for allowing First American Title Company to record your documents.



**Recorded Date/Time:** *8/30/2016 1:49 PM*
**Instrument Number:** *D2016007453000*
**Book:** *2364*
**Page:** *360*

**County/State:** *Effingham/GA*
**Borrower:** *BRYAN  THOMPSON*
**Document Type:** *Assignment*
**Document Seq:** *1*

## <u>Do not detach.  This page is now a permanent part of this document.</u>

Please visit *www.famortgageservices.com* to view the entire Recorded document

1100 Superior Ave
Cleveland, OH 44114
**TEL:** (216) 241-1278
**TOLL:** (800) 221-8683
<http://www.famortgageservices.com>



~~When Recorded Mail To:~~
FIRST AMERICAN TITLE COMPANY
NATIONAL RECORDING
1100 SUPERIOR AVE, SUITE 200
CLEVELAND, OH 44114

This Document Prepared By:
YVETTE KEYES
FLAGSTAR BANK, FSB
5151 CORPORATE DRIVE, MS W-530-1
TROY, MI 48098
(800) 945-7700

Tax/Parcel #: 0320-21

_____ [Space Above This Line for Recording Data] _____

## ASSIGNMENT OF SECURITY DEED

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., AS NOMINEE FOR SODERLIND INC., ITS SUCCESSORS AND ASSIGNS** (herein "Assignor"), whose address is **P.O. Box 2026, Flint, MI 48501-2026**, does hereby grant, assign, transfer and convey unto **FLAGSTAR BANK, FSB** (herein "Assignee"), whose address is **5151 CORPORATE DRIVE, TROY, MI 48098**, and its successors and assigns all its right, title and interest in and to a certain Mortgage described below.

Grantee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., AS NOMINEE FOR SODERLIND INC., ITS SUCCESSORS AND ASSIGNS**
Borrower(s): **BRYAN THOMPSON**
Date of Mortgage: **APRIL 20, 2015**
Original Loan Amount: **$115,429.00 ONE HUNDRED FIFTEEN THOUSAND FOUR HUNDRED TWENTY NINE AND NO/100**
Property address: **2628 GA HIGHWAY 119 S, GUYTON, GEORGIA 31312-4707**

Recorded on **APRIL 27, 2015** in **INSTRUMENT NO. 003007 BOOK 2288 PAGE 388** of the official Records of **EFFINGHAM COUNTY**, State of **GEORGIA**
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

*WHEN RECORDED, RETURN TO:*
*FIRST AMERICAN TITLE INSURANCE CO.*
*1100 SUPERIOR AVENUE, SUITE 200*
*CLEVELAND, OHIO 44114*
*NATIONAL RECORDING*

Assignment of Mortgage - MERS ▉▉▉▉
Wintrack #: ▉▉▉▉ ▉▉▉▉▉▉▉

Page 1



MIN #: ▉▉▉▉
MERS Phone: (888) 679-6377

IN WITNESS WHEREOF, The Assignor has hereunto set its hand and affixed its seal by and through its duly authorized officer executed on _8/22/2016_ .

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., AS NOMINEE FOR SODERLIND INC, ITS SUCCESSORS AND ASSIGNS**

By: _____
**ASSISTANT SECRETARY** Signature

Steven Bullard
**ASSISTANT SECRETARY** Print

_____                Seal:
Witness Signature

_____
Witness Print Name

_____ [Space Below This Line for Attestation] _____

State of _Michigan_
County of _Oakland_

Sworn, executed and delivered in my presence on _22_ day of _August_ , _2016_ by:

_____
Notary Public



_____                Printed Name
Scott E. Geyer
Notary Public - State of Michigan
Oakland County _____
My Commission Expires 12/15/2022     My Commission Expires
Acting in the County of Oakland

Assignment of Mortgage - MER: ▮▮▮▮▮                Page 2
Wintrack #: ▮▮▮▮ ║║║║║║║║║║


MIN # ▮▮▮▮
MERS Phone: (888) 679-6377



**EXHIBIT A**

BORROWER(S): BRYAN THOMPSON

LOAN NUMBER: ███████

LEGAL DESCRIPTION:

THAT CERTAIN TRACT OR PARCEL OF LAND SITUATE, LYING AND BEING IN THE CITY OF GUYTON, 10TH G.M. DISTRICT OF EFFINGHAM COUNTY, GEORGIA, CONTAINING ONE AND TWENTY-THREE/HUNDREDTHS (1.23) ACRES, MORE OR LESS, BOUNDED ON THE NORTHEAST BY LANDS NOW OR FORMERLY OF W.F. GRINER; ON THE SOUTHEAST BY STATE OF GEORGIA HIGHWAY #119; ON THE SOUTHWEST AND NORTHWEST BY LANDS NOW OR FORMERLY OF W.F. GRINER, ACCORDING TO A MAP OR PLAT MADE BY CHARLES F. TRUETT, JR., OCTOBER 16, 1980, RECORDED IN PLAT RECORD 14, PAGE 168, OFFICE OF THE CLERK OF THE SUPERIOR COURT, EFFINGHAM COUNTY, GEORGIA.

SUBJECT, HOWEVER TO ALL (IF ANY) RESTRICTIONS, COVENANTS, EASEMENTS AND INDEBTEDNESS OF RECORD OR EVIDENCED BY USE.

ALSO, ALL THAT CERTAIN TRACT OR PARCEL OF LAND SITUATE, LYING AND BEING IN THE CITY OF GUYTON, 10TH G.M DISTRICT OF EFFINGHAM COUNTY, GEORGIA, CONTAINING THREE TENTHS (.3) OF AN ACRES, MORE OR LESS, AND BEING KNOWN AND DESIGNATED AS PARCEL "B" AS SHOWN ON THE PLAT CABINET C-31-D AS RECORDED IN THE OFFICE OF THE CLERK OF THE SUPERIOR COURT OF EFFINGHAM COUNTY, GEORGIA, GUYTON 10TH G.M. DISTRICT. SAID PARCEL OF LAND BOUNDED ON THE NORTHEAST BY PARCEL "C" AS SHOWN ON SAID PLAT; ON THE SOUTHEAST BY GEORGIA STATE HIGHWAY 119; AND ON THE SOUTH WEST BY LANDS NOW OR FORMERLY OF MARY GRACE FISHER. THE SUBJECT PROPERTY IS COMMONLY REFERRED TO AS 2628 HWY 119 SOUTH, GUYTON, EFFINGHAM COUNTY, GEORGIA PIN # 0320-021.

ALSO KNOWN AS: 2628 GA HIGHWAY 119 S, GUYTON, GEORGIA 31312





Assignment of Mortgage - MERS ███████          Page 3
Wintrack #: ███████

MIN #: ███████

MERS Phone: (888) 679-6377